JAMES T. AND MARY F. COMPTON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Compton v. Commissioner
Docket No. 9989-81
United States Tax Court
T.C. Memo 1983-647; 1983 Tax Ct. Memo LEXIS 141; 47 T.C.M. (CCH) 158; T.C.M. (RIA) 83647; October 20, 1983. *141 Held: Fraud not proven for the years 1972, 1973 and 1974. Kirby L. Turnage and William J. Ellenberg, for the petitioners. Albert L. Sandlin, Jr., for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined the following deficiencies and additions to tax in petitioners' Federal income tax: Addition to Tax [1]
Year
Deficiency
Sec. 6653 (b)
1972
$3,824.92
$1,912.46
1973
10,394.73
5,197.37
1974
14,490.00
7,245.00
1975
13,788.57
*142 After concessions, the sole issue is whether petitioner James T. Compton is liable for the addition to tax for fraud under section 6653(b) for the taxable years 1972, 1973, and 1974. [2] The parties agree that unless fraud is found for such years, the statute of limitations bars the assessment of the taxes. Section 6501. [3]
*143 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners James T. Compton (petitioner) and Mary F. Compton, resided in Comer, Ga. on the date the petition was filed. Petitioners filed joint Federal income tax returns for the taxable years 1972 through 1975 with the Internal Revenue Service Center, Chamblee, Ga.
Petitioner has been engaged in the pulpwood and logging business since 1962. Petitioner purchased uncut timber from landowners and then after cutting and removing the timber sold it to various companies. Each company then issued both a settlement sheet and a check indicating the amount due petitioner. [4]
Petitioner deposited the checks into his business checking account [5] and withheld $110 to $120 to pay for various expenses such as meals that he and his employees incurred on *144 the job. [6] Petitioner then recorded the date and the total amount of each deposit in his checking account. In addition to depositing his business receipts in this account, petitioner also deposited the proceeds of several business loans he obtained from 1972 to 1975. Except as noted above, petitioner deposited all of his receipts in one of his two bank accounts. Petitioner's Federal income tax returns for the taxable years 1971 through 1974 were prepared by Faye Carey, (Carey), doing business as Faye Carey's Income Tax and Bookkeeping Service. [7] From 1972 through 1974 Carey also performed bookkeeping services for petitioner. Petitioner gave Carey both his settlement sheets and his checkbook stubs to compute his tax return and to keep his books and records. [8] However, Carey determined petitioner's gross income *145 solely from the settlement sheets petitioner gave her. Business expenses were determined from the check stubs. After preparing the returns, Carey presented them to petitioner who, after a cursory review, signed them and returned them to Carey to be filed. [9]
After respondent commenced an audit of petitioner's income tax returns for 1973 and 1974, petitioner requested Carey to help him determine whether he had understated his income in those years. Carey did so, and also recalculated petitioner's *146 1971 and 1972 Federal income tax liability. [10] Carey discovered that petitioners had substantially understated their income for each of the years 1971 through 1974. For 1972, 1973, and 1974, the understatement of gross income was in the amounts of $29,156.15, $36,802.86, and, $24,981.76, respectively. It was also discovered that Carey had understated various deductions, including interest that petitioners were entitled to deduct in 1971 through 1974. The understatement of gross income occurred because Carey relied solely upon the settlement sheets to determine petitioners' gross income. Had Carey used the deposits shown on petitioner's check stubs after deducting the loan proceed deposits and adding the $110-$120 petitioner withheld on each deposit to calculate his gross income, she could have accurately determined petitioners' gross income. In addition to understating gross receipts, petitioner also failed to report interest income *147 received in 1972, 1973, and 1974 of $4,022.04, $1,797.30, and $1,572.70, respectively. [11] However, on his return for 1975 petitioner reported the interest from that year and the interest from 1972 through 1974 after he learned that he had failed to report it in the earlier years. After petitioner learned that he had understated his income for 1971 through 1974, petitioner conveyed this information to the Internal Revenue Service, even though the original investigation only related to 1973 and 1974. Petitioner also offered to pay any of the back taxes found due and owing by the Internal Revenue Service for 1971 through 1974. In addition, petitioner gave the Internal Revenue Service the names of all the companies he had transacted business with and complete access to any books and records he had. Petitioner cooperated fully with the revenue agents during the course of the audit. Respondent determined that petitioner was liable for fraud for 1971 through 1974 and asserted deficiencies for 1971 through 1975. Petitioner conceded he was liable for fraud in *148 1971 and paid the addition to tax for fraud and the deficiency. Petitioner did so without obtaining the advice of his attorneys. ULTIMATE FACT No part of petitioner's underpayment of tax for the years 1972, 1973, and 1974 was due to fraud. OPINION The only issue is whether petitioner is liable for the addition to tax under section 6653(b) for fraud for the taxable years 1972 through 1974. Section 6653(b) provides that "[i]f any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment." * * * The burden of proof is upon respondent to establish, by clear and convincing evidence, that a part of the underpayment of the tax is due to fraud. Rule 142(b), [12] section 7454(a), . The existence of fraud is a factual question to be determined by reference to all the evidence in the record. . To establish fraud by direct proof of intention is seldom possible. It usually *149 must be gleaned from the conduct of the taxpayer and circumstances in question. . The required quantum of proof may be established by circumstantial evidence. , affg. a Memorandum Opinion of this Court. However, fraud is never imputed or presumed and courts should not sustain findings of fraud upon circumstances which at most create only suspicion. . In the instant case, respondent asserts that several factors establish by clear and convincing evidence that petitioner's returns for each of the years 1972, 1973, and 1974 were fraudulent. Specifically, respondent asserts that (1) petitioner made substantial omissions of business income over at least a consecutive four-year period; (2) petitioner had obvious business acumen and must have realized that his returns had omitted substantial items of gross income; (3) it is inconceivable that petitioner would be so cautions as not to lose one single check, whereas he would carelessly misplace or lose some of the settlement sheets each year *150 over a three-year period; and (4) petitioner, when questioned by the agents about the discrepancy, admitted that his income had been understated. Although the evidence does establish that petitioner omitted substantial amounts of gross income from 1971 to 1974, we nonetheless do not believe that respondent has met his burden of proof to show that any part of the underpayment was due to fraud. We have found that petitioner relied upon Carey to prepare his Federal income tax returns and that he turned over sufficient records to Carey for her to accurately determine his Federal income tax liability for the years in issue. It appears to us that petitioner's income was underreported in large part due to the carelessness and negligence of petitioner, as well as by the methods used by Carey, as opposed to the wilful intent of petitioner. Petitioner relied entirely on Carey to keep his books and prepare correct income tax returns for him but he did not make sure that she received and properly utilized all the information she needed to arrive at his correct taxable income. Carey, on the other hand, undertook to keep petitioner's books properly and prepare correct tax returns for him, *151 with the knowledge that petitioner was relying on her to do so, but she made little or no effort to determine whether the documents she used correctly reflected petitioner's income and expenses despite the fact that a rather cursory examination of the check stubs petitioner gave her would have suggested the deficiency. This is supported by the fact that not only did Carey fail to accurately report the total amount of petitioner's gross income, but she also omitted a large amount of the deductions to which petitioners were entitled. Also petitioner was available for her to ask him questions about his income and expenses but she did not do so. There is no evidence that petitioner ever failed or refused to give her any information she asked for nor that he ever gave her false information. While we agree with respondent that petitioner did have some degree of business acumen, we do not agree that this establishes that petitioner was aware of the underreporting. Petitioner was a logger who spent the majority of his time in the woods. He never prepared his own income tax return and he depended on Carey. Furthermore, once petitioner was audited for the years 1973 and 1974, he asked *152 Carey to look into the matter and help him "get to the bottom of the matter." At that time, petitioner gave Carey full assistance and cooperation in resolving the matter. In addition, we do not agree with respondent that it is inconceivable that petitioner could have lost some of the settlement sheets while he did not lose one single check. The checks represented money to petitioners and would obviously be treated with greater care than the settlement sheets. The checks were immediately deposited whereas the settlement sheets were left in the glove compartment of petitioner's trucks until Carey needed them to prepare his books and records. Thus, we do not find it inconceivable that some settlement sheets were lost over a three to four year period of time when none of the checks which accompanied the settlement sheets were lost. While we believe that petitioner should have realized something was wrong at the time the returns were filed and should have checked with Carey or another accountant, this may support a negligence addition, but there is no evidence that petitioner allowed the underreporting deliberately to avoid or evade income taxes. Petitioner's business increased *153 rapidly from 1971 through 1974 and petitioner was buying additional equipment to keep up with it, so he should have realized that he had to have considerable income to pay for the equipment. However, he was borrowing money to pay for the equipment and the income reported on his returns did increase substantially during these years, although not as much as it should have. Petitioner cooperated completely with the Internal Revenue Service during the audit and made no attempt to conceal anything. When petitioner learned that he had also underreported his income for 1971 and 1972, he volunteered this information to the Internal Revenue Service, despite the fact that 1971 and 1972 were not under investigation. In addition, he offered to pay any income taxes found due and owing for 1972 through 1974. Also, we note that although petitioner did admit that he underreported his income for the years 1972 through 1974, the admission was made after the audit began and after petitioner had Carey recheck his Federal income tax liability. It was only after Carey informed petitioner of his underreporting of income did petitioner admit the information to the Internal Revenue Service. Therefore, *154 this does not support respondent's assertion that he was aware of the underreporting at the time he filed his returns. [13]
Finally, there is no evidence that any of the typical hallmarks of fraud were present here. There is no evidence of misrepresentation of facts, concealment, artifice, or device to hide income on the part of petitioner. There were no double set of books, secret bank accounts under false names, overstatement of deductions, or ficticious transactions.Petitioner's transactions were out in the open and anyone could, without much effort, determine petitioner's income by simply contacting his customers, who were not too numerous, and analyzing his bank deposits and the installment sale transaction which was revealed on his 1971 return but not on subsequent returns until *155 the 1975 return. Such circumstances do not indicate a wilful effort to underreport income and evade tax. In summary, we find that respondent has not established by clear and convincing evidence that any part of petitioner's underpayment of taxes for 1972, 1973, and 1974 was due to fraud. Therefore, we find that petitioner is not liable for the additions to tax for fraud under section 6653(b) for the years 1972, 1973, and 1974, and that the statute of limitations bars the assessment of the deficiencies for such years. Decision will be entered for petitioners for the years 1972, 1973, and 1974, and decision will be entered under Rule 155 for the year 1975.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable years in issue.↩
2. Respondent determined in the statutory notice of deficiency that petitioner Mary F. Compton is not liable for the additions to tax under sec. 6653(b) for the years 1972, 1973, and 1974, but that she is liable for the deficiencies in income tax for such years. Petitioners concede the underlying deficiencies for 1972 through 1974 in the event we find petitioner James T. Compton is liable for fraud for such years. For 1975, petitioners have not raised any issue with respect to such year in the pleadings, at trial or on briefing. We conclude that they have conceded all the adjustments set forth in the notice of deficiency relative to 1975. ↩
3. (a) GENERAL RULE. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.↩
4. Generally, one of petitioner's employees would pick up the checks and settlement sheets. The checks were then handed over to petitioner and the settlement sheets were left in the glove compartment of the trucks petitioner's employees used to deliver the logs.↩
5. During 1971 and 1972, petitioner maintained one checking account for both business and personal purposes. In January 1973, petitioner opened a separate checking account to be used for business purposes. ↩
6. Petitioner sometimes withheld additional amounts that were placed in his and his wife's personal account that were used to pay for personal expenses.↩
7. Carey has operated a bookkeeping and return preparation company since 1969. Prior to preparing petitioner's income tax returns, she worked as an office manager in a bookkeeping department, took several continuing education courses, H & R Block courses, and, attended various seminars. She prepared primarily personal, small business, and farm type returns, including returns for other loggers. ↩
8. Petitioner paid Carey $30 to $40 per quarter for the services she was rendering. ↩
9. Petitioner personally handled all of the business and finances of his logging business. However, petitioner had never prepared his own Federal income tax returns and depended entirely on Carey to do so.↩
10. At trial, Carey indicated that petitioner and his wife evidenced an interest "to get to the bottom of the matter" and provided her with all the records she requested in recalculating their Federal income tax liability for 1971 through 1974.↩
11. The interest income was attributable to real property petitioner sold on the installment basis on Oct. 2, 1970.↩
12. All rule references are to the Tax Court Rules of Practice and Procedure.↩
13. We also do not believe that petitioner's concession that he was liable for fraud for 1971 changes our result. The admission related to a year not before us and petitioner made the concession before consulting with his attorneys. It was also suggested during the trial that petitioner was indicted for criminal tax fraud for the years 1972-1974 but was acquitted by the jury after a trial.↩